Filed 3/4/16  Baccouche v. State of California Dept. of Transportation CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| HENRI BACCOUCHE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | B259569<br><br>(Los Angeles County<br>Super. Ct. No. KC060256) |


APPEAL from a judgment of the Superior Court of Los Angeles County. Patrick Madden, Judge.  Affirmed.


Kerry S. Schaffer for Plaintiff and Appellant.


Jeanne E. Scherer, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel and Mark A. Berkebile, for Defendant and Respondent.


_____

A jury rejected Henri Baccouche's claim against the State of California, Department of Transportation (Caltrans) for injuries he sustained in an accident on Interstate 10. Baccouche challenges the verdict on the ground he should have been permitted to argue to the jury that Caltrans spoliated evidence by repairing the roadway. We affirm the judgment.

**FACTS**

While traveling west on Interstate 10 at 8:30 p.m. on October 31, 2009, Baccouche lost control of his motorcycle and crashed as he switched lanes to exit on the Baldwin Avenue Bridge. Baccouche's friend, who was following him in a car, stopped to help. Paramedics also arrived and examined Baccouche before releasing him to go to the hospital in his friend's car. Baccouche was admitted to the hospital for a fracture to his right ankle and injuries to his fingers, which required surgery. Prior to going to the hospital, Baccouche asked his friend to drive through the area again to try to determine what caused the accident. They exited the freeway and drove back through the scene of the crash twice, each time feeling a "jolt" as they drove over the approach slab of the Baldwin Avenue Bridge. Baccouche noted the location of the jolt.

By the time the California Highway Patrol (CHP) arrived, Baccouche had already left to go to the hospital. The CHP officer noted an abandoned motorcycle on the right shoulder, but did not conduct an accident investigation. The motorcycle was towed and a form was mailed to Baccouche to alert him to the location of his motorcycle.

About 10 days after the crash, Baccouche revisited the scene and took pictures and a five-minute video of the area. He noted several potholes in the area which may have caused the strong jolt he felt. On December 8, 2009, Baccouche requested the maintenance records for the Baldwin Avenue Bridge from Caltrans, indicating it was for "legal" purposes. An attorney from Caltrans contacted Baccouche the following day and Baccouche told him about the crash and his injuries. Baccouche also sent an email attaching the photos he took of the area. Baccouche was offered a $5,000 settlement, which he refused.

On April 29, 2010, Baccouche filed a government claim seeking compensation for his injuries and damages. The claim was rejected, "because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board." In March 2010, Baccouche and his attorney inspected the site of the accident, but did not take any further photographs.

Baccouche filed suit on December 23, 2010. At trial, his theory of liability centered on Caltrans' failure to maintain the roadway or warn of a dangerous condition. He introduced inspection reports into evidence produced by Caltrans which identified a one and one-half inch settlement of the approach slab at the expansion joint on the Baldwin Avenue Bridge. These reports were compiled every two years from 1987 to 2011. In a report from 2002, a Caltrans engineer noted settlement of about one inch and recommended it be leveled. The one inch settlement was again noted in 2004. In 2009, a Caltrans engineer noted the "structural approach slabs of lane #2, #3 and #4 have settled approximately 1.5 inches." The engineer recommended the slabs be replaced.

Baccouche presented a traffic engineering expert who testified that the one and one-half inch settlement, combined with the pothole, created a hazardous condition for motorcyclists at night. The expert further opined a warning sign should have been posted at that location. Baccouche's motorcycle expert testified that the one and one-half inch settlement, along with the pothole, caused the front wheel of the motorcycle to swing back and forth, causing Baccouche to lose control.

Caltrans' defense relied on the theory that any settlement could not have occurred where Baccouche believed it did because the approach slab rested on a three-inch "L" shaped lip at the expansion joint, which would have prevented any settlement. Using the design plans for the Baldwin Avenue Bridge, Caltrans experts testified it was impossible for the approach slab to settle at the expansion joint due to this feature. Caltrans also presented testimony from the maintenance supervisor responsible for maintaining the Baldwin Avenue Bridge. He testified he never received any complaints from the public about this location, and that he would have expected to if the slab had settled. Another Caltrans expert testified she reviewed traffic accident data for the area. In the five years

3

preceding the accident, 204 million vehicles traveled through the accident site with only four motorcycle accidents reported. Of these, all of the accidents occurred in the high occupancy vehicle lane and involved motorcycles being hit by other vehicles.

The jury returned a verdict for Caltrans, finding the Baldwin Avenue Bridge area at issue was not "in a dangerous condition when used with due care at the time of the incident." Judgment was entered on August 12, 2014. Baccouche timely appealed.

## DISCUSSION

Baccouche contends the trial court erred by precluding evidence that Caltrans breached its duty to preserve evidence which entitles him to a new trial. We disagree.

## I. Proceedings Below

Beginning in 2005 or 2006, Caltrans initiated plans to replace the ramps, approach slabs, and other things at the Baldwin Avenue Bridge. In the interim, Caltrans repaired the Baldwin Avenue Bridge area by patching the approach slabs in 2007. After Baccouche's motorcycle accidence in 2009, Caltrans began construction pursuant to its original plan in November 2010 and the slabs were replaced. Baccouche sued on December 23, 2010. Baccouche sought to argue to the jury that Caltrans' replacement of the Baldwin Avenue Bridge approach slab amounted to spoliation of evidence. Caltrans moved to exclude evidence or argument on these topics, on the grounds that they did not amount to spoliation of the evidence and were subsequent remedial measures. The trial court granted the motions. It "advised counsel that in this case this is not a spoliation case . . . [¶] . . . Whether the state of California could have or the State of California should have, but didn't, take photographs is not part of what this case is all about. This case is all about what happened at the date and time of the accident. Both parties had the legal ability to take photographs of the area. The fact that the defendant did or did not do anything is not relevant to any issue in this case."

The trial court, however, permitted plaintiff's counsel to introduce evidence that Caltrans staff had recommended replacement of the slab and had a plan in place to do so before the accident. It also allowed plaintiff's counsel to cross-examine Caltrans' witnesses about whether they had taken any pictures of the slab and whether their

4

opinions were based on their own inspection of the condition of the bridge. As a result, plaintiff's counsel was permitted to argue in closing that Caltrans failed to present pictures or other evidence of the condition of the area. The trial court instructed the jury to consider "the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence." (CACI No. 203.)[1]

## II.     Analysis

Baccouche contends the trial court's refusal to allow evidence and argument on spoliation was prejudicial error. He asserts Caltrans "willfully destroyed crucial evidence" by failing to take measurements, photos, and videos of the pothole and slab settlement, which "prevented him from proving to the jury that he crashed because of a dangerous condition approach on public property." We disagree.

We start first by noting the applicable standard of review -- the trial court has broad discretion to admit or exclude evidence. (*Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 288.) "We will reverse only if the court's ruling was 'arbitrary, whimsical, or capricious as a matter of law. [Citation.]' [Citation.]" (*People v. Branch* (2001) 91 Cal.App.4th 274, 282; see also *People v. Geier* (2007) 41 Cal.4th 555, 585 ["A trial court's decision to admit or exclude evidence is a matter committed to its discretion ' "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "].)

We turn next to the substance of the Baccouche's argument by defining spoliation. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation. [Citations.] Spoliation occurs along a continuum of fault--ranging from innocent through the degrees of negligence to intentional conduct. [Citation.]" (*Willard v. Caterpillar,*

---

[1]     The jury instructions were not transcribed by stipulation of the parties. However, the record shows the instructions agreed by the parties to be given by the court and CACI No. 203 is included in the agreed upon list of instructions.

*Inc.* (1995) 40 Cal.App.4th 892, 907.) Such conduct is condemned because it "can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8 (*Cedars-Sinai*).) In *Cedars-Sinai,* the California Supreme Court declined to recognize an independent tort cause of action for spoliation of evidence. However, the high court recognized alternative remedies to spoliation. (*Ibid.*)

For purposes of our analysis, we need not decide whether *Cedars-Sinai* requires Caltrans to preserve evidence when it became aware of reasonably foreseeable litigation. This is because it did not conceal or destroy evidence at all, even when considering Baccouche's argument in its most favorable light. Indeed, Baccouche does not contend Caltrans spoliated evidence by repairing the Baldwin Avenue Bridge. Instead, he contends it spoliated evidence by failing to document the condition of the bridge prior to the repair. Because Baccouche is mistaken when he characterizes this as spoliation of evidence, we find no error.

Caltrans decided to repair the bridge in 2005 or 2006, at least three years before Baccouche's accident, and did so in 2010 pursuant to its standard procedures. Baccouche does not challenge the actual replacement of the slabs. He "is not suggesting in any way that Caltrans should have left the settled slabs and potholes unrepaired . . ." He instead contends "Caltrans most assuredly should have preserved the evidence of the disputed condition by inspection, documentation with measurements and photos as well as careful excavation of the end of the westbound approach slab in the #4 lane of the Baldwin bridge at the joint at the backwall to prove whether the slab was resting on dirt or a paving notch as claimed by [Caltrans witnesses]." In short, Baccouche takes issue with Caltrans' failure to take pictures or otherwise document the condition of the bridge prior to its repair. That is not *spoliation* of evidence. It is a *failure to create evidence* to support Caltrans' defense that the settlement did not occur where Baccouche claimed it

6

occurred. Any documentation of the bridge prior to its repair would only have given Baccouche additional, stronger evidence of the condition of the slab. We reiterate – Caltrans had no duty to create evidence for its own defense or to support Baccouche's case.

Any prejudice Baccouche may have suffered as a result of a lack of additional evidence due to Caltrans' failure to document the condition of the bridge prior to the repair was addressed by the trial court's instruction to the jury under CACI No. 203: "If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence."

Moreover, access to the area was available to both Baccouche and Caltrans prior to the slab replacement. Baccouche took pictures of and videotaped the accident site and drove through it a number of times. He could have, but did not, report the accident to the CHP in order to initiate an accident investigation. In the 12 months between the accident and when Caltrans began its replacement of the Baldwin Avenue Bridge slabs, however, Baccouche failed to document the condition of the area beyond his initial photographs and video. Given these circumstances, the trial court did not abuse its discretion when it granted Caltrans' motion in limine to exclude evidence of spoliation.

Neither is it reasonably probable that he would have achieved a more favorable result had he been allowed to argue that Caltrans failed to document the condition of the slab prior to its repair. (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1540 [no judgment may be set aside for erroneous evidentiary ruling unless it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error]; Cal. Const., art. VI, § 13.) This is because Caltrans did conduct inspections of the Baldwin Avenue Bridge and document its condition in its biennial reports. At trial, Baccouche made ample use of these reports, which identified a one and one-half inch settlement at the approach slab, where his accident occurred. These reports recommended replacement of the approach slab. Baccouche was also permitted to cross-examine Caltrans witnesses about whether they had taken any pictures and argue in

7

closing that Caltrans failed to present pictures or other evidence of the condition of the area.

We likewise reject Baccouche's related argument that the trial court erred in granting Caltrans' motion to exclude evidence of the actual repair of the bridge. Baccouche contends evidence of the subsequent repair and replacement of the Baldwin Avenue Bridge approach slab is relevant to the issues of spoliation and impeachment and not for the purpose of proving negligence or culpable conduct.[2] Because there was no spoliation, the trial court did not abuse its discretion in granting Caltrans' motion to exclude evidence of the actual repair to the bridge. Moreover, Baccouche was allowed to impeach Caltrans' engineers about their recommendations to replace the approach slab. No prejudice resulted from this exclusion because it is not reasonably probable Baccouche would have received a more favorable result. The trial court allowed him to introduce evidence that Caltrans planned to repair the bridge; he simply could not show that Caltrans actually repaired the bridge. That is a distinction without a difference for our purposes and it is not reasonably probable the jury would have afforded this distinction any weight.

## DISPOSITION

The judgment is affirmed. Caltrans is awarded costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.

---

[2]     Evidence Code section 1151 prohibits the admission of subsequent remedial measures to prove negligence or culpable conduct in connection with an event.

8